UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ERIC JAMES LARREA,<br><br>                Plaintiff,<br><br>vs.<br><br>DEPUTY KOREIS,<br><br>                Defendant. | Case No. 1:22-cv-00190-DCN<br><br>**SUCCESSIVE REVIEW ORDER BY SCREENING JUDGE** |

The Court ordered Plaintiff Eric James Larrea to file an amended complaint to correct deficiencies in his original pleading. Dkt. 7. Having reviewed the Amended Complaint and Exhibits, the Court concludes that Plaintiff has failed to state a federal claim upon which relief can be granted.

Plaintiff alleges that, on May 20, 2021, he was a defendant in a criminal action who had been granted pretrial release after posting bond. At that time, he was being supervised by the Canyon County Pretrial Release agency, where Defendant Koreis worked, while Plaintiff was awaiting trial on another criminal charge. Plaintiff was wearing a GPS tracker as a condition of his pretrial release. Dkt. 11-2, p. 15.

Because Plaintiff was wearing a tracking device as part of his pretrial release conditions, Canyon County had an interest in knowing where he was at all times. Plaintiff has not identified a constitutional right to having his location kept a secret from other local law enforcement officers when he is wearing a tracking device and when law enforcement officers were attempting to find and arrest Plaintiff for potential new crimes.

The closest constitutional protection against the government wrongfully collecting private information about a person is offered by the Fourth Amendment.[1] The Fourth Amendment prohibits only *unreasonable* searches, and the reasonableness of a search depends on the totality of the circumstances, including the nature and purpose of the search and the extent to which the search intrudes upon reasonable privacy expectations. *See, e.g., Samson v. California*, 547 U.S. 843 (2006) (suspicionless search of parolee was reasonable). A pretrial releasee has a Fourth Amendment right not to have his privacy invaded or other protections breached *without probable cause*, even when the releasee has signed an agreement to be searched without probable cause as a condition of release. *U.S. v. Scott*, 450 F.3d 863 (9th Cir. 2006) (finding no probable cause to test Scott for drugs and that probable cause to search his house did not exist until after the drug test came back positive).

Here, Plaintiff's pleadings and exhibits show that police had probable cause to arrest Plaintiff for eluding a police officer on May 16, 2021—established several days prior to the sharing of the location information. Dkt. 11-2, p. 18. The police report shows that an involved officer received the probable cause information at about 7:30 a.m. on May 20, 2021. Dkt. 11-2, p. 21. The potential eluding offense of May 16 that is the basis for the original probable cause determination is not to be confused with unrelated eluding behavior and charges arising on May 20, though additional probable cause factors emerged as the

---

[1] The federal Privacy Act of 1974, 5 U.S.C. § 552a *et seq.*, and its criminal counterpart, 18 U.S.C. § 1905, prohibit disclosure of confidential information by federal employees and agencies. These statutes do not apply here because no defendant is a federal employee or agency.

SUCCESSIVE REVIEW ORDER BY SCREENING JUDGE - 2

incident developed on that date. Plaintiff again eluded officers by driving up to 90 mph when they tried to arrest him (12:38 p.m. on May 20, 2021, see Dkt. 11-2, pp. 9-10),[2] potentially battered an officer (May 20, 2021, see Dkt. 11-2, pp. 30-31), and tampered with and discarded his tracking device (12:45 p.m. on May 20, 2021, see Dkt. 11-2, pp. 15, 20).[3] Because more than adequate probable cause existed before the location sharing occurred, Plaintiff has not stated a Fourth Amendment claim. He had no privacy interest in keeping his location secret from law enforcement agencies in and near Canyon County after probable cause to arrest him existed. Under these circumstances, officers from Nampa, the United States Marshal Service, and the Caldwell City Police coordinated with Canyon County to find and arrest Plaintiff using the GPS location information provided by Deputy Koreis of Canyon County Pretrial Release. See Dkt. 11-2, p. 21.

Under this set of facts, the Court finds no legal basis for Plaintiff's federal claims. The Court has looked but not found case law governing this particular type of claim, but there are several cases and articles that discuss asserted privacy interests in not being DNA-tested, an issue somewhat analogous to Plaintiff's claims. In its research, the Court found no support for Plaintiff's position that he had a privacy interest in keeping his location secret from local law enforcement officers under the circumstances set forth above.

For example, in *United States v. Weikert*, 504 F.3d 1 (1st Cir. 2007), the court reasoned: "After careful consideration, we conclude that the government's important

---

[2] Plaintiff did not stop for officers, but chose to drive recklessly in and out of traffic at a speed of up to 90 miles an hour to elude officers.

[3] Plaintiff's GPs device was found behind Wal-Mart in Meridian, Idaho.

SUCCESSIVE REVIEW ORDER BY SCREENING JUDGE - 3

interests in monitoring and rehabilitating supervised releasees [and] solving crimes … outweigh Weikart's privacy interests, given his status as a supervised releasee, the relatively minimal inconvenience occasioned by a blood draw, and the coding of genetic information that, by statute, may be used only for purposes of identification." *Id.* at 14. As a result, the court concluded: "after consideration of the totality of the circumstances present here, … we conclude that neither the blood draw nor the subsequent creation of a DNA profile and the entry of that profile into CODIS constitutes an unreasonable search or seizure in violation of the Fourth Amendment." *Id.* at 15. A blood draw invades a person's privacy much more than sharing a person's location among law enforcement agencies, but both are warranted when considering the important community interest of solving crimes.

Historical changes in the Fourth Amendment's reach also tend to show that in the modern day, the government can lawfully invade personal privacy interests where use of the private information is for limited legitimate government purposes:

> Use restrictions flow directly from the Fourth Amendment's protection for privacy. With the abandonment of the property paradigm during the Warren Court era, the government can seize information and property even when it does not enjoy a superior property interest. The legitimacy of the seizure hinges instead on the purposes for which the government will use the items and information, whether for criminal law enforcement or for some regulatory end. Governmental authorities thus can only use the items seized consistent with the purposes justifying the seizure.

Harold J. Krent, *Of Diaries and Data Banks: Use Restrictions Under the Fourth Amendment*, 74 Tex. L. Rev. 49, 100 (1995). Here, there are no allegations that law

SUCCESSIVE REVIEW ORDER BY SCREENING JUDGE - 4

enforcement officers used the location information for anything but a legitimate government purpose—to arrest Plaintiff under probable cause of having committed the offense of eluding of an officer on May 16.

Many of Plaintiff's causes of action are based on state actors' alleged violations of state agency policies or contracts. Through the jail grievance system, Lieutenant Engle and Captain Patchett communicated to Plaintiff that Pretrial Services is permitted to share information. Dkt. 11, p. 5. That response is consistent with Fourth Amendment law requiring that probable cause is an adequate reason for sharing location information with law enforcement officers.

Absent a showing that a defendant violated a plaintiff's federal constitutional rights, complaints about the violation of state statutes or state agency regulations are insufficient as a matter of law to support a claim for relief under § 1983. *See Jones v. Lowndes County, Mississippi*, 678 F.3d 344, 352 (5th Cir. 2012) ("[A]n alleged violation of a state statute does not give rise to a corresponding § 1983 violation, unless the right encompassed in the state statute is guaranteed under the United States Constitution."); *Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996) (holding that a prison official's failure to follow prison's own policies, procedures, and regulations does not constitute a violation of due process if constitutional minima are nevertheless met"). This Court cannot hear state law claims in federal court without one or more related federal causes of action to anchor the state law claims. *See* Title 28 U.S.C. § 1367 (providing that a district court may exercise supplemental jurisdiction over state claims when they are "so related" to the federal claims "that they form part of the same case or controversy under Article III of the United States

Constitution."); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966). Here, Plaintiff may not proceed on state law claims because his federal claims fail.

Plaintiff also vaguely alleges that the release of information caused a police officer to "put hands on [Plaintiff] without any kind of warning," that Plaintiff sustained some type of physical injury, and that his motorcycle sustained damage when he was finally apprehended. Dkt. 11, p. 4. Officers reported that Detective Michael Coronado had a hold of Plaintiff's arm while Plaintiff had stopped his motorcycle at a store, but Plaintiff pulled away, dragging Coronado and driving close to the side of a building to knock Coronado into the side of the building so that Plaintiff could drive away unimpeded. Dkt. 11-2, p. 18. Plaintiff states: "Although defendant didn't physically cause physical damage, I feel it's important that defendant's actions, or lack of, are or were the moving force for the damages to occur." Dkt. 11, p. 6.

Even if Plaintiff had stated a federal claim, Plaintiff has not plausibly connected Defendant's actions to Plaintiff's injuries to show that Defendant's actions proximately or legally caused Plaintiff's injuries. "The doctrine of superseding cause is ... applied where the defendant's negligence in fact substantially contributed to the plaintiff's injury, but the injury was actually brought about by a later cause of independent origin that was not foreseeable…. Superseding cause operates to cut off the liability of an [earlier] negligent defendant." *Exxon Co., U.S.A. v. Sofec, Inc.*, 517 U.S. 830, 837 (1996). In this case, Plaintiff's decision to elude police officers was a superseding and intervening cause of his motorcycle damage and injuries. An officer's decision to "put his hands on Plaintiff without any kind of warning" to attempt to detain Plaintiff for arrest is likewise a

superseding and intervening cause.

In summary, the Court notes that Plaintiff has been provided with standards of law and an opportunity to amend his complaint. Plaintiff has done so, and provided additional incident records for the Court's examination. The Fourth Amendment protects against *unreasonable* searches and seizures, and officers of Canyon County and concurrent or neighboring jurisdictions had probable cause to share and used the shared GPS location information to locate and arrest Plaintiff. Neither the federal Privacy Act nor state agency policies and procedures prohibiting disclosure of private information form the basis of a federal cause of action under the circumstances of this case. Because Plaintiff has failed to state a federal claim upon which relief can be granted, and further amendment would not aid him in doing so, the Court will dismiss Plaintiff's case.

## ORDER

**IT IS ORDERED** that this entire case is DISMISSED without prejudice for failure to state a federal claim upon which relief can be granted.

DATED: June 14, 2023

_____
David C. Nye
Chief U.S. District Court Judge